13773

EX PARTE RODDEY *ET AL.*
SEABURY, RECEIVER, v. HALL

(172 S. E., 866)

*Messrs. Shepard K. Nash* and *W. M. Reynolds,* for appellants,

*Mr. Raymon Schwartz,* for respondent,

February 14, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

December 5, 1925, Planters' Fertilizer & Phosphate Company entered judgment against E. Murr Hall in the office of the Clerk of Court for Sumter County. July 1, 1927, S. L. Roddey, as receiver of the stockholders' liability fund of the People's Bank, entered judgment against E. Murr Hall in the office of the Clerk of the Court of the same county. Neither of them issued execution then, nor did they issue and lodge executions with the sheriff of the county until at the time and in the circumstances hereinafter set forth. January 6, 1933, the respondent, J. C. Seabury, as receiver of City National Bank of Sumter, S. C., entered in the Clerk of Court's office for Sumter County judgment against E. Murr Hall, and on the same day he lodged with the sheriff of Sumter County an execution which directed him to levy upon the property of E. Murr Hall. The sheriff returned this execution with an entry thereon of *nulla bona.* Thereafter, to wit: August 1, 1933, the respondent obtained from Judge Stoll an order which required the judgment debtor, Hall, to appear before the Master for Sumter County to answer on oath concerning his property. Upon the coming in of the Master's report, which disclosed that the judgment debtor had certain securities of the value of about $1,000.00, which had been hypothecated in New York to secure an indebtedness of about $185.00, Judge Stoll, on August 31,

1933, issued his order directing the sheriff to levy upon the property of Hall, and especially the property discovered in the supplementary proceedings in order *to satisfy the judgment of the respondent.* This order was duly served on the sheriff. On August 30, 1933, the appellant, Planters' Fertilizer & Phosphate Company filed with the sheriff of Sumter County an execution in the case of this appellant against E. Murr Hall, and on August 31, 1933, the appellant, S. L. Roddey, filed with the sheriff of the same county an execution in his case against E. Murr Hall. Pursuant to the order of Judge Stoll, the holder of the securities forwarded them to the National Bank of South Carolina, Sumter, S. C., September 1, 1933, the sheriff took the three executions above mentioned, and the order of Judge Stoll, to the bank, and levied on the securities, which, after due advertisement, he sold. From the proceeds of sale he paid the costs of the proceeding, the note due the holder of the securities, $185.00, and the homestead of Hall, $500.00, leaving a balance in his hands of approximately $117.00. Thereupon the appellants procured from Judge Stoll a rule requiring respondent to show cause why the order of August 31 should not be amended by permitting all judgment creditors to share equally in the residue of the funds in the sheriff's hands.

On hearing the return to the rule, Judge Stoll, by his order of date September 9, 1933, revoked the rule to show cause, and directed the sheriff to proceed under the order of August 31, 1933; and out of the residue of the proceeds of sale to first satisfy the judgment of the respondent against E. Murr Hall, and, if any funds remain thereafter, he shall hold them for the further order of the Court. From this order the appeal comes to this Court.

There is but one exception. It charges error in giving priority to respondent's execution over those of appellants, because Section 744, Code of Laws of South Carolina, 1932, gives them equal rank.

It would seem that this single alleged error limited the issues of the appeal to a narrow circumference, but the argument has taken a wide range.

The argument of appellants' attorneys states the question for adjudication in this wise: "Where three executions are levied at the same time, on the same property, does the fact that one of the judgment creditors, having had his execution returned '*nulla bona*,' brought supplementary proceedings and discovered the property which was levied upon, give this creditor a preference where the proceeds of sale of the property are insufficient to satisfy even one of the executions?"

We think this statement should be amplified by the further statement of facts as they appear in the record, to wit: that appellants' judgments were obtained and entered, the one in 1925, the other in 1927, and no executions issued thereon until respondent had discovered property of the judgment debtor through supplementary proceedings, which property was about to be sold by order of the Court to satisfy his execution. This statement seems pertinent because the question of diligence arises and is discussed.

The provision of Section 744 of the Code of 1932 upon which appellants rely is in these words: "Executions shall not bind the personal property of the debtor, but personal property shall only be bound by actual attachment or levy thereon for the period of four months from the date of such levy."

In the cases of the *State v. McCary,* 120 S. C., 361, 113 S. E., 275, and *McManus v. Bank of Greenwood,* 171 S. C., 84, 171 S. E., 473, this section was considered, and it was held that levy is necessary to bind personal property. But these cases do not dispose of the question here involved.

Appellants contend that, as all three executions were levied at the same time, they take equal rank in the distribution of the proceeds of the sale of the property levied on, and they rely on the case of *Bachman v. Sulzbacher,* 5 S. C., 58. The

syllabus of that case states: "Where two executions are levied by the sheriff on personal property on the same day, but at different hours of the day, the first levied is not entitled to preference, but the liens of both attach as if levied at the same instant of time."

It does not show from the record in that case whether the two judgments were of the same date. The case turns principally upon the doctrine that the law does not take cognizance of parts of a day, except in certain exceptional circumstances. But we do not think that case is decisive of this one upon which we are engaged. There, there was no question of supplementary proceedings and the rights of the parties as fixed by the orders of the Court. Unless there is some enactment or decision of the Court of last resort, since the *Bachman v. Sulzbacher case,* it would seem that the rule therein established still prevails.

But that would not dispose of this case. The facts of the present case take it out of the operation of the rule there stated.

Counsel for respondent contends that supplementary proceedings are equitable in their nature, and with equal zeal counsel for appellants argue that they are legal in their nature. The latter, from the case of *Burdett v. McAllister,* 42 S. C., 352, 20 S. E., 86, 87, cite this sentence: "It is a legal remedy;" but immediately following that language is this: "It is not an equity, *so far as the judgment debtor is concerned.* * * *" (Italics added.) Does it not appear to be a necessary corollary, deducible from those words, that it is an equity so far as the plaintiff is concerned who has invoked the remedy of supplementary proceedings?

In *Kennesaw Mills Co. v. Walker,* 19 S. C., 107, speaking of supplementary proceedings, the Court said: "The proceeding is not technically what is called a special proceeding, but a continuation of the action in which the judgment was recovered, and in one sense a substitute for the former creditor's bill."

The old creditors' bill was essentially equitable in its nature. ·

"Supplementary proceedings are an extraordinary remedy, *largely equitable in their nature.* * * * The purpose of supplementary proceedings, as authorized by statute in many states, *is to provide a substitute for a creditors suit* whereby a judgment creditor may obtain a discovery of property of the judgment debtor which cannot be reached by execution. Such proceedings are not a substitute for an execution but are merely intended to supplement it by reaching assets which cannot be reached thereby. *They are in the nature of additional or equitable executions.*" (Italics added.) 23 C. J., 826.

Our own Court has said that these proceedings are analogous to the creditors' bill. This definition of a creditors' bill is given in 15 C. J., 1380: "Generally defined, creditors suits or bills are bills in equity filed by creditors to enforce the payment of debts out of property of debtors under circumstances which impede or render impossible the collection of the debts by the ordinary process of execution."

In 10 R. C. L., 1373, this is found: "The inadequacy of the ordinary means of enforcing a money judgment by levy upon and sale of the property of the defendant has led to the very general adoption of proceedings supplementary to execution. * * * In a sense proceedings supplementary to execution are in their nature equitable."

In the annotation to the case of *Hammond v. District Court, etc.,* 39 A. L. R., 1490, case page 1501, we find this: "While not considering the necessity of a new process in proceedings supplementary to execution, the New York Court of Appeals, discussing generally the nature of such proceedings as provided by the old Code of Procedure, in *Wright v. Nostrand* (1883), 94 N. Y., 31, said that such proceedings, rather than being strictly in the nature of an action, are 'in the nature of new remedies for equitable

rights, arising by force of the statute, in the actions in which the judgments were obtained.' "

It is patent that supplementary proceedings are equitable in their nature and designed to aid the enforcement of rights which cannot be enforced by the legal process of execution. That being so, it must follow that Judge Stoll had authority to direct the payment of the proceeds of the sale of the debtor's property to the judgment creditor whose diligence had discovered the property of the judgment debtor and brought it into Court.

In the case of *Rhodes v. Casey*, 20 S. C., 494, it appears that judgments were given in the Probate Court to nine distributees of an estate, with leave to each of them to issue execution against the administrator. Two of these issued executions, which were returned *nulla bona*, and they then began supplementary proceedings.

The Court, by Mr. Justice McGowan, said: "The matter of greatest difficulty in the case, is, to whom should the proceeds of the judgment be paid—to all the distributees on their shares pro rata, or only to the two who instituted the proceedings; and we suppose that must depend somewhat upon the manner in which the executions were issued. We are not informed whether they were issued separately, or following the decree, collectively in one process; but we incline to think that the judgments and executions may properly be regarded as separate, and the proceeds should go to those whose vigilance made the discovery and whose activity instituted the proceedings."

In the case of *Ryttenberg v. Keels*, 39 S. C., 203, 17 S. E., 441, 445, Mr. Chief Justice McIver, for the Court, said: "When it was adjudged that the assignment should be set aside as null and void, it is the same as if it had never existed (*Gracey v. Davis*, 3 Strob. Eq., 58 [51 Am. Dec., 663]), and hence the defendants, Clarke and Winkler, in this case, stand practically before the Court as individuals who are found in possession of property of Keels, Nelson & Co.,

which they acquired illegally, and which, therefore, is liable in their hands to be subjected to the payment of the debts of Keels, Nelson & Co., *and as the plaintiffs are the only creditors who have taken the proper steps to subject such property, or rather the proceeds of its sale, to the payment of debts, they were entitled to a judgment that the same be paid to them.* (Italics added.) * * * The plaintiffs being the only creditors who had sued out execution upon their judgment, and had the same returned *nulla bona,* were the only creditors who were in a position to institute an action like this. *Hendricks v. Robison,* 2 Johns. Ch. [N. Y.], 283 ; *McDermutt v. strong,* 4 Johns. Ch. [N. Y.], 687 ; *Day v. Washburn,* 24 How., 352 [16 L. Ed., 712] ; and especially the case of *Freedman's Saving and Trust Co. v. Earle,* 110 U. S., 710, 4 S. Ct., 226 [28 L. Ed., 301], where the whole subject is elaborately considered. Our own cases of *Rhodes v. Casey,* 20 S. C., 491 ; *Claflin v. Iseman,* 23 S. C., 416, and *Curlee v. Rembert* [37 S. C., 214], 15 S. E., 954, while not exactly in point tend to support this view. But we need not go into any extended observations to support this view for two reasons: First, because we think our conclusion can be fully sustained upon the ground first considered ; and, second, because the opinion of Mr. Justice Matthews in the case of *Freedman's Saving & Trust Co. v. Earle, supra,* is so full and satisfactory that we need only to refer to that case as containing the argument and authorities upon which we rely."

In this case thus so confidently relied upon by the great jurist who wrote the opinion in *Ryttenberg v. Keels, supra,* the question was before the Court on consideration of a creditors' bill to subject a debtor's equitable interest in property to the payment of a judgment at law. Mr. Justice Matthews, for the Supreme Court of the United States, *Freedman's Saving & Trust Co. v. Earle,* 110 U. S., 710, 4 S. Ct., 226, 229, 28 L. Ed., 301, said:

"The ground of the jurisdiction, therefore, is not that of a lien or charge arising by virtue of the judgment itself,

but of an equity to enforce satisfaction of the judgment by means of an equitable execution. And this it effects by a sale of the debtor's interest subject to prior incumbrances, or according to circumstances, of the whole estate, for distribution of the proceeds of sale among all the incumbrances, according to the order in which they may be entitled to participate. *Sharpe v. Earle of Scarboro*, 4 Ves., 538.

"It is to be noted, therefore, that the proceeding is one instituted by the judgment creditor for his own interest alone, unless he elects to file the bill also for others in a like situation, with whom he chooses to make common cause; and as no specific lien arises by virtue of the judgment and execution alone, the right to obtain satisfaction out of the specific property sought to be subjected to sale for that purpose dates from the filing of the bill. 'The creditor,' says Chancellor Walworth in *Edmeston v. Lyde,* v *Paige* [N. Y.], 637–640 [19 Am. Dec., 454], 'whose legal diligence has pursued the property into this Court, is entitled to a preference as the reward of his vigilance; and it would 'seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination should in the end be obliged to divide the avails thereof with those who have slept upon their rights.' "

Further from the same case: "As was said by this Court in *Day v. Washburn,* 24 How. [65 U. S.], 352 [16 L. Ed., 712] : 'It is only when he has obtained a judgment and execution in seeking to subject the property of his debtor in the hands of third persons, or to reach property not accessible to an execution, that a legal preference is acquired which a Court of chancery will enforce.' "

This is the principle which takes precedence over the rule established by *Bachman v. Sulzbacher, supra,* in the application to proceedings of this nature, and which sustains the order of Judge Stoll which gives preference to the respondent over the appellants.

Appellants contend that the order of Judge Stoll was without force and effect, for the reason that the personal property in question was in the City and State of New York, had been hypothecated by the judgment creditor (debtor?), and was in the custody of the pledgee.

The judgment debtor and/or the pledgee of the property might have raised this question, but did not. On the contrary, it appears that the pledgee sent the property to a bank in Sumter. It was then subject to the order of the Court.

Moreover, appellants bottomed their appeal solely upon the ground that under Section 744 of the Code of 1932 they stood in parity with respondent in the distribution of the proceeds of the sale of the property. It does not appear that the other question was raised or passed upon in the Court below; it cannot, therefore, be considered here.

The appeal is dismissed, and the order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.