18819

UNITED STATES of America, Appellant, v. SOUTHERN GROWTH INDUSTRIES, INC., by its Receiver, Clifford F. Gaddy, Jr., and John H. Mauldin, Respondents.

(162 S. E. (2d) 849)

*Messrs. Edwin L. Weisl, Jr., Assistant Attorney General,* of Washington, D. C., *Klyde Robinson, United States Attorney,* of Columbia, *Robert O. Dupre, Assistant United States Attorney,* of Greenville, and *John C. Elridge* and *Walter H. Fleischer, Attorneys, Department of Justice,* of Washington, D. C., *for Appellant,*

*Wm. Byrd Traxler, Esq.* of Greenville, *for Respondent, John H. Mauldin,*

*Messrs. Edwin L. Weisl, Jr., Assistant Attorney General,* of Washington, D. C., *Klyde Robinson, United States Attorney,* of Columbia, *Robert O. Dupre, Assistant United States Attorney,* of Greenville and *John C. Eldrige* and *Walter H. Fleischer, Attorneys, Department of Justice,* of

Washington, D. C. *for Appellant, in Reply,*

August 14, 1968.

LITTLEJOHN, Justice.

Clifford F. Gaddy, Jr., is the state court receiver of an insolvent small business investment company called "Southern Growth Industries, Inc.," hereinafter referred to as "Southern." This litigation arises because the United States of America filed a petition within the receivership action against the receiver and against John H. Mauldin. Both the petitioner and Mauldin are judgment creditors of Southern, and the dispute is actually between these two on a question of priority. The receiver takes no position and awaits the order of the court.

The facts are not in dispute. On October 7, 1963, Mauldin obtained a judgment against Southern for $103,430 in the Court of Common Pleas for Greenville County, and entered the same on the court record. The judgment was not satisfied on demand, and a writ of execution was issued by the county sheriff, who returned a nulla bona. Mauldin then instituted supplemental proceedings and found Southern hopelessly insolvent. Thereafter, by order dated April 8, 1964, Southern was placed in receivership, and on April 25, 1964, Clifford F. Gaddy, Jr. was appointed the receiver, was empowered to take charge of the assets, books and records of Southern, which he did.

A subsequent order of the court on May 21, 1964, noted that the Small Business Administration (United States of

America claim) might have a claim against Southern and stated that: "the receiver has the duty of acting for all creditors." The receiver then began to marshal assets.

On November 13, 1964, the receiver filed a petition with the court describing the assets of Southern and stating that they "consisted of various notes, debentures, and shares of stock in various small business corporations, cash of One Thousand Ninety-Four and 10/100 ($1,094.10) Dollars and a limited quantity of office equipment." The petition asked that priorities be determined later. An attached schedule of assets (all personalty) and liabilities showed that Mauldin was a judgment creditor and that Southern owed the Small Business Administration more than $600,000, on which debt the United States had already instituted an action in Federal Court.

On November 17, 1964, the court entered an order directing the receiver to commence actions against any debtors, and to hold all funds collected (except for expenses of administration) to be disbursed later upon the order of the court.

On June 10, 1965, the United States of America obtained a judgment against Southern for $621,508.75 in the United States District Court.

On June 16, 1965, the state court ordered the receiver to distribute to Mauldin certain monies already collected. The United States was aware of that order but did not intervene. The funds were distributed and that distribution is not in contest here. The present litigation involves funds later acquired by the receiver.

On December 23, 1966, the United States filed its petition in the state court alleging that it had prior rights to the funds in the hands of the receiver by reason of Title 31, Section 191 of the United States Code. That section reads in part as follows:

"(w)henever any person indebted to the United States is insolvent * * * debts due to the United States shall be first satisfied."

It is the position of Mauldin that he has a specific and perfected lien, which he contends defeats the statutory priority.

Mauldin moved for judgment on the pleadings, and the judge of the court of common pleas granted the motion, ruling that Mauldin had a specific and perfected lien. He held that the United States did not have a prior lien under the statute and ordered distribution to Mauldin after payment of costs of adminstration. The United States has appealed from such ruling.

The sole question for determination by this court is: Did judgment creditor Mauldin have a specific and perfected lien upon personal property in the hands of the receiver so as to defeat the statutory priority of the United States under Title 31, Section 191 of the United States Code?

Section 10-1711 of the South Carolina Code of Laws reads as follows:

"Executions shall not bind the personal property of the debtor, but personal property shall only be bound by actual attachment or levy thereon for the period of four months from the date of such levy."

This section requires actual attachment or levy before personal property is bound. There can be no specific and perfected lien on personal property until it is bound by actual attachment or levy. Attachment is defined by Black's Law Dictionary as "The act or process of taking, apprehending, or seizing persons or property, by virtue of a writ, summons, or other judicial order, and bringing the same into the custody of the law." The same dictionary defines levy as "To assess; raise; execute; exact; collect; gather; take up; seize."

"In claims of this type 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. * * * Until such possession, it remains a general lien." *United*

*States v. Gilbert Associates,* 345 U. S. 361, 366, 73 S. Ct. 701, 704, 97 L. Ed. 1071 (1953).

Mauldin did nothing to reduce any personal property of Southern to possession prior to the appointment of the receiver nor since such appointment. Indeed, his inability to find assets against which there could be an attachment or levy was the cause of the receiver's appointment. The most that can be said for Mauldin is that he diligently tried to locate assets and failed.

After the receivership came into being all assets were in effect in the custody of the court, and Mauldin could not at that time do anything to negotiate an advantage. *Carroll v. Cash Mills,* 125 S. C. 332, 118 S. E. 290 (1923).

Mauldin did nothing which gave him a right to lay his hands on all or any specific personalty and to proceed against that property to satisfy his indebtedness.

His lien was general and unperfected, the same as that of the United States. The argument that Mauldin should have some advantage because he initiated the proceeding has much appeal, but the statute is controlling. Southern is clearly insolvent, and under the terms of the statute the United States has priority.

Courts have, in several cases, reserved the question of whether the statute prevails when a lien is actually specific and has been actually perfected. Since we hold that there was no specific and perfected lien, we do not reach that question.

The lower court erred in granting to Mauldin a priority, and is accordingly,

Reversed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.