### 20485

FCX, INC., Respondent, v. LONG MEADOW FARMS, INC., Feedright Milling, Ralston Purina Co., Dairy Cows, First National Bank of South Carolina, James E. Herlong, Ruby T. Herlong, W. Wesley Carroll, J. Levi Longshore and Bankers Trust of South Carolina of whom Dairy Cows is Appellant.

(237 S. E. (2d) 50)

*Robert A. McKenzie, of Rogers, McDonald, McKenzie, Fuller* and *Rubin,* Columbia, *for Appellant,*

*Kevin Campbell, of Ackerman, Woodard* and *Campbell,* Walterboro, *for Respondent,*

August 10, 1977.

RHODES, Justice:

This case involves a determination of the order of priority of judgment creditors in the funds to be derived from the sale of real estate in which the debtor has an equitable interest. The lower court held that plaintiff-respondent, FCX, Inc., was entitled to priority in payment over defendant-appellant, Dairy Cows (a partnership). We reverse with respect to this issue.

This declaratory judgment action was instituted by FCX against ten (10) defendants of whom only the defendant Dairy Cows is the appellant. The complaint asked the court to construe the validity and legal effect of an agreement which FCX had entered into with Long Meadow Farms, Inc., on July 14, 1975. It sought an order from the court implementing the agreement in accordance with the respondent's view thereof.

The answer of the appellant denied the material allegations of the complaint. By its counterclaim, the appellant sought a declaration by the court that FCX had acted as a trustee for all of the creditors of Long Meadow Farms, Inc.; that the assets coming into the hands of FCX by virtue of the agreement of July 14, 1975 be declared for the benefit of all of the creditors of Long Meadow Farms, Inc.; and that the assets be distributed on a pro rata basis to all judgment creditors.

In 1969, James E. Herlong and Ruby T. Herlong contracted to sell two (2) tracts of real estate to J. Levi Longshore. The deed for the real estate was to be held in escrow by Bankers Trust of South Carolina and delivered to Longshore when the purchase price provided for in the contract of sale was paid. The contract called for payments over a twenty (20) year period, but provided that after five (5) years the remaining balance could be paid at any time and the deed delivered.

In 1972, Longshore assigned his right under this contract of sale to Long Meadow Farms, Inc. Thereafter, Long Meadow Farms experienced financial reverses, became insolvent, and confessed judgments to Feedright Milling, FCX, Ralston Purina Company, Dairy Cows, and the First National Bank of South Carolina. These judgments were filed in the office of the Clerk of Court of Saluda County in the order in which they are listed above. Subsequent to these judgments, the agreement of July 14, 1975, which purported to assign the interest of Long Meadow Farms in the Longshore contract to FCX, was executed.

The July 14, 1975 agreement provided that FCX would assume the burden regarding the contract of sale with the Herlongs. FCX further agreed as follows:

"[T]o exercise the right to purchase the above-described property, to sell the same for the best obtainable price, and to satisfy the judgment from the proceeds of sale, to the

extent such proceeds are available arising from sale by FCX, Inc. of the above-described property, after first deducting the cost and expenses including legal fees incurred thereby, to apply the proceeds of sale to pay off and discharge existing indebtedness under any sales contract hereby assigned to FCX, Inc., to satisfy or cause to be satisfied all liens and encumbrances against Long Meadow prior to the judgment of FCX, Inc., and to pay all surplus proceeds, if any, to the Clerk of the Court of Common Pleas of Saluda County pending adjudication of rights of creditors of Long Meadow subsequent to the Judgment Lien of FCX, Inc."

Although several issues were determined by the trial judge's order in this suit, the only matter appealed from is his ruling that the proceeds obtained from the sale of the real estate should be distributed in the order in which the judgments were filed in the office of the Clerk of Court. While under this ruling FCX would be second in the order of payment, it is conceded that the sale proceeds would be sufficient to pay its judgment. The appellant, Dairy Cows, would be fourth in the order of payment, and it appears that the funds derived from the sale would be insufficient to pay its judgment under the ruling of the trial court.

The question, then, before us is the following: what is the priority, if any, in the payment of judgments herein and, specifically, does FCX have any prior position by virtue of its agreement with Long Meadow Farms? If Long Meadow Farms had held *legal* title to the real estate, then, under established law, the judgments would constitute a lien upon the real estate in the order of their filing and there would be no question of priority. However, because the debtor owned only an *equitable* interest in the real estate by virtue of the contract of sale, it must be determined what effect, if any, this circumstance has upon the priority of distribution to the judgment creditors.

The appellant argues that the settled law in South Carolina is that a buyer's equitable interest is not subject to the

lien of a judgment against him. This contention is supported by the following line of cases: *Richards v. M'Kie, Harp. Eq.* 184 (1824); *Roddy and Co. v. Elam,* 12 Rich. Eq. 343 (1866); and *Whitmire v. Boyd,* 53 S. C. 315, 31 S. E. 306 (1898). While these cases are old, we have not been cited to, nor have we found, any statutes or later cases abrogating or overruling them.

The Court in *Roddy and Co. v. Elam, supra,* followed the common law rule that the lien of a judgment attaches only to real property in which the judgment debtor has a vested legal interest. *See* 49 C. J. S. Judgment § 479(a). Respondent contends that because South Carolina's judgment lien statute (S. C. Code § 15-35-810 [1976] ) was enacted subsequent to the decision in the *Roddy* case, the rule of that case is no longer applicable. However, this Court in *Whitmire v. Boyd, supra,* which was decided after the enactment of the predecessor of § 15-35-810, cited with approval the rule announced in the *Roddy* case to the effect that a vendee's equitable title is not subject to the lien of a judgment. Upon the authority stated above, we hold that liens did not attach to the real estate here involved at the time of the filing of the judgments.

It must next be determined what would, under this circumstance, be the proper priority, if any, of the judgment creditors of Long Meadow Farms in the distribution of funds. If the assignment had not been made to FCX by Long Meadow Farms, the appellant and the other judgment creditors could have reached the debtor's equitable interest in the real estate by applying to the court for the appointment of a receiver or for such order as would protect all the creditors. The appellant either did not elect or did not have the opportunity to seek, prior to the assignment to FCX, the court's aid by way of supplementary proceedings. However, if a receiver had been appointed, it is clear that all of the judgment creditors would have been paid on a pro rata basis because their respective judgments never constituted liens as to particular assets of the debtor meriting priority payment.

The respondent contends that it was not acting as receiver either by virtue of a court appointment or by virtue of its contract with the debtor. It cannot be disputed, however, that the respondent acted in a similar capacity as assignee or trustee of Long Meadow Farms for the benefit of all creditors. Under such circumstances this Court has ruled that if there are no liens or preferred creditors, the property of a debtor under an assignment for the benefit of creditors must be distributed ratably among all the creditors, *Guggenheimer and Adelsdorf v. Groeschel*, 23 S. C. 274, 55 Am. Rep. 20 (1885). Since it is our opinion that no judgment creditor had a lien upon the equitable interest involved herein, the proceeds received from this asset should be distributed ratably among all judgment creditors unless FCX is entitled to priority by reason of its alleged "superior diligence".

Although the principle of superior diligence is apparently not used by the trial judge as a basis for supporting his ruling that the judgment creditors should be given priority in accordance with their respective dates of filing, the trial judge nonetheless states in his order that FCX could be given priority by reason of its superior diligence and effort in producing and preserving the asset.

In the case of *Ex Parte Roddey*, 171 S. C. 489, 172 S. E. 866 (1934), the equitable principle of superior diligence was applied to grant a preference in payment to one of the judgment creditors. Although in that case the judgment creditor was third in rank, he was the only creditor to undertake supplementary proceedings which uncovered ownership of certain securities. In view of this fact, this Court affirmed an order applying the proceeds from the securities first to the payment of the third judgment creditor's debt. [1]

While recognizing the equitable principle stated in *Ex Parte Roddey*, we are of the opinion that it should be spar-

---

[1] Similar applications of the principle of superior diligence are contained in *Gardner v. Coker*, 184 S. C. 190, 192 S. E. 151 (1937), and *Crown Central Petroleum Corp. v. Elmwood Properties*, 244 S. C. 588, 138 S. E. (2d) 38 (1964).

ingly applied. The case at bar does not involve the uncovering of an unknown asset. The trial judge states in his order that "[i]t can be clearly inferred that all parties in doing business with Long Meadow Farms were aware of the basic structure by which Long Meadow Farms had acquired the property of the Herlongs." The record indicates that FCX has expended considerable sums in making current payments to the Herlongs in order to prevent forfeiture of the sales contract, and the order of the trial court gives FCX full reimbursement, prior to payment of any judgment creditor, for all sums so expended. Reimbursement is provided on the same basis for attorney's fees incurred by FCX in carrying out its agreement with Long Meadow Farms. These provisions of the lower court's order have not been appealed from.

While the action of FCX in preserving this asset is to be commended, we do not feel that it is sufficient justification for granting it a preference in the payment of its judgment not otherwise sanctioned by law.

We, therefore, reverse so much of the order of the lower court providing that the judgments be paid on the basis of priority of filing, and we decree that such judgments shall be paid ratably. The remainder of the order of the trial court is affirmed.

The respondent in its brief requests that it be paid attorney's fees for defending this appeal. We do not feel that such additional fees are justified under the facts of this case.

Reversed In Part; Affirmed In Part.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.